Case numbers 22-15-72, 22-15-75, Jimmy Leftwich et al. v. Mark Driscoll et al. Argument not to exceed 15 minutes per side. Ms. Jones, Mr. Garish, you may proceed for the appellants. Good morning. Good morning. Courtney Jones on behalf of Officer Driscoll. Counsel at the table with me is on behalf of Officer Baugh, and we'll be sharing our time today. I'm going to ask each of you to imagine that you are fully uniformed police officers who are dispatched to a shots fired call in a residential neighborhood at night. The dispatcher tells you that the 911 caller reported that his neighbor walked out on the front porch and shot off his gun nine times and went back in the house and reloaded it. The three of you arrive on scene and plan out your approach. You are each instructed to grab your long rifles. You stop in front of the plaintiff's house. Justices Sutton and Mathis, you are positioned to the left of plaintiff's front door. Justice Siler, you are positioned to the right of plaintiff's front door. You're approximately six to eight feet away from the plaintiff. All of a sudden, the front door opens abruptly and... Judge Mathis says, put your arms down, and then we decide, does he put his arms down? And if he keeps his arms down, we proceed. He raises his arm as if to shoot, then they have a right to use force. Why isn't that the way to think about it? There wasn't that... the officers didn't say that the minute he opened the door. They didn't say, close the door, put your arms down, police. I've watched it. I mean, it ain't exactly a picture's worth a thousand words because it's so hard to see anything, but it happens so fast, but you don't hear them saying that. But you do hear, as soon as he opens the door, you hear the racking of a firearm. I don't understand this part of the case. Who brings a firearm in that kind of a setting that's not loaded? Who does that? You hear the racking of the firearm from the plaintiff. I know. I'm making the point. Who brings out a gun that isn't loaded if they're worried that someone's threatening them, right? The point is, racking strikes me as superfluous. It was loaded in being that there was a magazine in it. Yes. Racking to chamber around into the chamber. This plaintiff had a .274 blood alcohol content. They didn't know that at the time. No, no, no. I'm making the point. I'm trying to, in a way I'm helping you, although the point doesn't help this case. I think officers are entitled to assume when someone comes out of the house under these circumstances, all they have to do is point and shoot. I think that's a pretty fair assumption if it's already been shooting the gun. So you seem to be saying if they're ready to shoot and the guy opens the door even with his arms to the side, you don't have to do anything. You just fire away, and I can't believe that's the rule. No, and I apologize if that's what I'm saying. I'm not saying that as soon as someone opens the door, you fire away. I'm saying in this circumstance, he took the extra added step to rack his firearm, which is what you do when you were about to shoot. You rack your firearm and load a bullet into the chamber. He took that extra step to do that in this case, meaning that all he had to do was point his gun in the direction of any of the three of the officers, and they could have been killed instantly within six to eight feet away. He indicated he wasn't racking his gun, and don't we have to take all factual disputes in Mr. Lefkowitz's favor? Not when there's a videotape. The Supreme Court and this court has held that if there's a videotape, you take the evidence in the light of the videotape. So I wasn't able to see him racking his gun on the videotape. Is that something you were able to see? You can't see it. You can hear it on the video. You can hear the audible racking of the firearm on the video. Didn't somebody else say they thought that was a shifting of a safety on another weapon? Correct. That is what one of plaintiff's theories is. The sounds are two totally distinct sounds. Any reasonable police officer would know that the difference between racking a handgun and a soft noise of removing a safety are completely different sounds. You could Google it. I spent last night Googling different sounds. You can Google it, and you can hear that the sounds are entirely different. The sound of a racking of a semi-automatic handgun with the removing of a safety are completely different sounds. But the Chief, when he first reviewed it, he didn't think it was the racking of a gun. Is that right? No. The very first time he watched the video, he did not hear the racking of the gun. But that's just because the way he testified, that he had the sound up to a certain decibel, and he was just hearing the clatter of everything else. But the officers and the video and plaintiff's own expert all say the racking of the gun is audible on the video. Who's opening the door to his house? Is that Mr. Lefwish opening the door? Yes. It seems to me, when I review it, that this racking sound is taking place at the exact same time that the door is opening. So how is it possible for him to be both opening the door, presumably with his hand, and also racking the gun, which generally takes two hands? Sure. I don't think that they're exactly instantaneous. I think the door swings open and then you hear the racking sound of the gun at the same time. Regardless, the case law says, even if the officers are mistaken in their belief that it was the racking of a gun, they're still entitled to qualified immunity because they all believed that they heard the racking of a gun in this case. There's a case that I cited from the 11th Circuit, Carr, where a plaintiff is folding his sunglasses and it sounds like click, clack, click, clack, kind of sounds like the racking of a gun. And in that case, the officer there was entitled to qualified immunity, even though they didn't have a gun, they had sunglasses in that case. But they believed that the individual who racked their gun... What case is that? In what area? 11th Circuit, and that was Carr. Carr? Carr, C-A-R-R, versus Tatelangelo. I just wanted to... Yes, sure. Learn about all the racking cases. Yes. Okay, sorry, let me get back to where I was here. Did all the officers hear racking? I thought one of them... All three officers heard the racking of the gun. Okay. The plaintiff's expert admits that you can hear it on the video. The video, you can hear audibly on the video as well. The law does not require the officers to wait until a plaintiff shoots his gun in order to... You haven't responded to the point I made at the outset with your putting us in the shoes of the officers, so I'm going to stick with that. Okay. Why isn't it relevant that they didn't try to put your hands down, drop the gun? I mean, there's really no... As best I can tell, there is no opportunity to avoid being shot at. You know, I get the racking point, I got it, but I'm just not understanding. That seems to prove you could be very quick in shooting if there was a motion of raising the arm. That would be quite understandable to me. But I just am not understanding why the first move isn't... You know, if you think the door opening is dangerous, close the door. You think the door opening is fine, say drop your weapon or say keep your arms down. I'm just not following that part of it. Sure. And actually, two of the officers, the two of you who would be standing to the left of the porch, saw the plaintiff raise the gun at them and point it in the direction of the other one of you who is standing on the left. And they do yell twice in the video, let me see your hands. So that's not apparent in the video, and on the testimony point, isn't that disputed? That he raised his arms? Yes. That point is disputed by plaintiffs. I don't want to admonish you, but it's never helpful to make arguments that are premised on reading the facts your way. Right? That doesn't really help us out. No, I know you were asking about if they had raised his arms. And so even for the point of this argument, even if he hadn't raised his arm, the fact that he comes out of the house, racks the firearm, is in holding a firearm, even if it is, as plaintiff says, down at his side, loaded, and he can shoot it within a second or less and harm any of the officers. They tell him, let me see your hands. He doesn't do anything, doesn't drop the gun, doesn't say anything, and this is what happens. And there's multiple cases, and I see I'm out of time, so I will give it to my co-counsel here, but there are multiple cases that we've cited in our brief where these split-second decisions, the officers are supposed to be given deference for their split-second decisions. Thank you. Good morning. May it please the Court. Jeff Garish on behalf of Officer Baugh. The reason I think why Ms. Jones pointed out that you have to look at this from the perspective of the officer is obvious, and that's because anybody can, in hindsight, look back at what might have been more reasonable after the dust settles. But you have to look at what the officer's perspective was, and I know the Court knows this. We've cited a lot of cases precisely because it's much different from his perspective, who's potentially about to get shot, than to analyze what's reasonable after the fact in leisure as we're doing now. So we must get five or six of these a year. So we've seen a lot of them, and I'm just telling you my reaction to them. There's usually something that is more threatening than, quote, the racking, or I would call it the same thing, having a loaded gun, right? In both situations, they're ready to be shot, and all you have to do is raise the arm. We have to take the facts as the assumption the arms are down, and I'm just a little puzzled why you don't require the officers to say, you know, close the door, drop the gun, something that, you know, tries to de-escalate the situation. What I'm a little worried about with your position is it seems to be as if you know someone has a loaded gun and they open the door, you can fire at them, that the threatening act is opening the door, because now there's nothing between you and the officers, and I'm just thinking that's a very broad rule, and I'm a little worried about that. But the difference, Your Honor, and I know I take your point, you are not, you didn't find the racking of the gun compelling, but if you watch the video, the From your perspective, racking is another way of, it's the visual equivalent of saying, as you open the door, I'm going to kill you all, right? That's what you're saying, I think that's what you think this means. More or less. And I have, this is where I would disagree. I would say those kinds of words, you still as an officer have to say, you know, either take cover, but say, drop the gun, close the door, and it's more than this is someone who's out of control. But it's one thing to say some words which takes longer than the racking of the gun. This is what the officers are faced with. He comes out, he opens the door, they hear it racked. Do they really have to wait for him to do this? It's a whole point. It's a tenth of a second. And then it's too late. If there was no sound of the racking, would they still be allowed to shoot the plaintiff? I'm sorry? If there was no sound of the racking, would they still be able to shoot? Or is this the magic sound? Yeah, I don't think so. I think you're right. And I guess this is your point, Judge Sutton. But the point, if he comes to the door. The reason it's my point is I'm assuming if someone comes out with the gun, they're ready to go. They rack the minute before they open the door. And so, you know, out beyond earshot. In a weird sort of way, this does not help you guys in this case. In a weird sort of way, my perspective helps officers in future cases. My assumption is they're ready to go. This is not a toy. This does not require any more movement. It requires just as you said. And the minute they don't listen to orders, the minute they do anything that looks like a raised hand, all bets are off. I'm with you on that. But the racking is something that they hear that says, as Ms. Jones says, it shows that they're ready to shoot. But let me switch gears if I can because I have very limited time. Judge Sutton, you say you get five or six of these cases a year. The problem is they've only cited three cases that supposedly clearly establish the law here. Dickerson, Brandenburg, and King. None of those cases involves anything like that. In Dickerson, the guy was shot from behind in his house as he was walking toward the door. In Brandenburg, he had put his gun down, and the issue was whether he had picked it up and pointed it at the officers. That's analogous to here, but there was a question of fact as to whether he had done that. He had actually picked it up. And the other case, King, he was laying on the couch and the gun was on his side. And the reason I want to take some time to talk about this, the judge didn't talk at all about whether the law is clearly established. There's nothing in the judge's opinion in terms of case law clearly establishing that when someone comes to the door, they rack the gun, and it's dark and you can't see, you have to wait for him to do this, by which time it's too late. I mean, if it was undisputed that he was actually pointing the gun at them, there wouldn't be even any argument of a constitutional violation. So do they really have to wait for that to happen, I guess is the question, and is it clearly established that they have to wait for that to happen? There's no case law that clearly establishes that. Well, it's just a classic level of generality problem, but I thought you had to have some aggressive move, and I guess the debate is you think Rocking's the aggressive move, and I'm saying, I would have assumed anyone comes out of the house with a gun, it was ready to be fired. There was nothing left to be done. If I were an officer, that's how I train officers, I'll put it that way. Understood. The sound of it, though, under the emergency circumstance, the sound of it is the sound of someone about to shoot. I know the court understands. Thank you for your time. All right. Thank you very much. I hear from Mr. Lorelli, I think it is. Yes, Your Honor. Thank you. Good morning. Vincent Lorelli on behalf of the plaintiffs. This court is correct. The lynchpin to the defendant's argument is the racking of the gun. But what the defendants will not tell you is, is it a racking of the gun, and who racked the gun? And I'm here to tell you today that my client did not rack that gun. And the reason that I can tell you that he did not rack the gun is because you hear this metal clanking. What they want to say is the racking of the gun. It's audible and it's clear. But anything my client, Mr. Lefwitch, said is not heard on the body camera. So if Mr. Lefwitch is speaking, which he is because they testified to that, and is racking the gun, how does the body camera pick up just the racking crystal clear, but not the words of Mr. Lefwitch? That's because he didn't rack that gun. Is your theory that one of the officers was racking their gun? It has not been established that it was a racking of the gun, Your Honor. It's our opinion that it was metal clanking. These police officers were in tactical gear. They have AR-15s, they have belts. They're bringing their machine guns up into a firing position when you hear this metal clanking. So it's our position. It makes a difference whether it was an actual racking or they just thought it was a racking. When they hear something, or can they just come to court and give an affidavit and say, I thought there was a racking of the gun even though you don't hear it on the tape or anything else. Well, that'd be a great excuse that any officer could then use in any situation to qualify for immunity. But I don't think it would be reasonable, Your Honor, because the second point on why he couldn't rack the gun is because there was no magazine in it. He shot, the gun falls down, the state police retrieved the gun, and there's no magazine in it. Well, there's a magazine in one of the pictures there, is there not? There is, but it's separate from the gun. Well, I know, but they're bound to have pulled it out of there if they seized the weapon. We don't know about that. No, no, no, because they left the gun as is. See, the shooting officer wanted to take possession of the gun as they were clearing the house. The sergeant on scene instructed him to leave it alone. And then the Michigan State Police obtained the gun, photographed it, and that's why we know that there was no magazine in it at the time that this shooting occurred. Now, is it possible that he was lying on the ground after getting shot in the head and he pulls the magazine out? That's not probable. That's what the defendants will tell you. But there was simply no magazine in it when that gun fell to the ground after he fell back inside his house. And so without a magazine in a pistol, you can't rack it. So what about their clearly established argument? So their clearly established argument would proceed along these lines. Even if it's true that this violated the Fourth Amendment, they couldn't do this, and we should say so, which I guess at one level is good for your side of the case, but then we have to deal with the question of whether there really is a fact pattern in a situation like this where we rejected the idea that racking is not a sufficient reason to be concerned that your safety is at issue, that racking is almost the equivalent of starting to raise the arm. Because I think they're right about that. If you look at it as a racking case, I don't see the case, certainly not from our circuit, that shows the officers knew they couldn't do this. So what do we do about that point? Well, Your Honor, the more troubling question that I would pose is with these officers not identifying themselves as police officers. Okay, so try to answer the question I just asked, okay? Qualified immunity has two prongs. I'm giving you a bone, which is that you win the first prong. Now show me how you win the second one. They're saying, listen, where's the case that shows racking is threatening, that allowed them to be in a more defensive posture, and therefore in this situation they had the right to use force. What's the case? And why is it sufficiently like this? The case on point is the best case that I have is Dickerson, in which a man is walking with a gun, the police are outside, the independent witness says he's walking with the gun at his side, the police officer says he exited the house with his gun raised, and they shoot him. This court said question of fact. Question of fact over whether he raised his arm? Whether the shooting was reasonable because there was a threat to the officer, correct, Your Honor? I know, but was there a fact dispute about whether the arm was raised before the officer shot? Correct, there was. Okay, but I don't know why that helps here. That's this case, and we have to assume, I agree with you, we have to assume the arm was down if there's a fact dispute about that. But I'm trying to say their whole point is racking is a very aggressive move, and that changes the equation, and I'm trying to figure out what to do with that. With all due respect, Your Honor, I think it's a bridge too far to say that if a person that has a gun racks it, then it's open season on that individual. So the rule would be, you're right, that's prong one, that's why the Fourth Amendment doesn't allow it, but because there's nothing to the contrary in the case law, that means the officers still get qualified immunity, even though you're right about what the Fourth Amendment should mean, and we say so. But it's still acting unreasonably to conclude that what they think is racking is racking, and that justifies the use of deadly force when there are more than one individual in the range of their guns. Everybody forgets about Lisa Lethwich. She's an American citizen residing in her home. She was three feet from her husband when she was shot at. Does that give them justification to shoot at an innocent American inside her own home? And I pray this wasn't the situation, but one of the stray bullets went behind the Lethwich's house, went into the neighbor's upstairs bedroom, and if there was an occupant of that bedroom and that occupant was struck... Is this helping answer the clearly established point? You keep going to the arguments I'm granting you. I'm giving you the victory on the Fourth Amendment. I understand. I'm trying to help us on the clearly established. I mean, it's your call where to go, but it's very funny to say you win the first half. Now show me how you win the second half, and you want to go back to why your first half was just awesome. You win the first half. Is it clearly established that there was racking in this case? I don't believe so. And then if there was, does that give them qualified immunity? And I tell you, Your Honor, that the other cases that they cite with the racking, there was an actual threat to the officer. That wasn't here in this case, right? So the case that they cite, the car case, you had the victim throwing rocks into the bushes where the officers were. That was an overt act that threatened the officer. And then when another officer who saw that fires at the victim as he's taking off his sunglasses or whatever he's doing, and then he says, Well, I thought that I heard a racking of the gun. So there you have a racking of a gun with an overt threat. In this case, there's absolutely no overt threat because what are the words of the two shooting defendants? Show us your hands. So you go from show us your hands to firing a weapon? I just don't think that this is the type of case in which qualified immunity can be given to these officers because I think, in all honesty, it would set a very dangerous precedent because all my client did was open his front door. Now, they say, Well, he had a gun and the gun was raised, and we know that, and that justified their shooting. But I want this court to look at the other officer, Officer Phillips. He was not sued. He was not part of this litigation. But he was the officer closest to the left winch. He was just on the other side of the door. He testified that he didn't see a gun on Mr. Lefwich. He testified that there was no lights and it was dark inside the house. Again, he didn't fire. Now, the defendants will tell you, Well, he's at a different vantage point. He's on the right and the two shooting defendants are on the left. That's true, but what the defendants don't tell you is they testified that Mr. Lefwich was out on the front porch when they fired at him. That's not in the video, but that's what their testimony is. So if Mr. Lefwich is on the front porch, the vantage point, whether you're on the right or left, does make a difference. Now, that's for the trial of the case, if there is one. That's really not what we're here for. I understand, but that, again, goes to the perceived threat of the officers and their decision to use deadly force. And if there is no legitimate threat, then there is no qualified immunity. And that's why this case specifically is fact specific. I could go on and on in terms of the facts because there is quite a bit of it and it hinges on the outcome of the case. But just to point out one area that the defense didn't mention was Plankton's experts, a biomechanical engineer. They like to cite him to his statement that there was racking of a gun. He didn't say that it was Lefwich's racking, but he said that when you look at everything, when you look at the darkness, when you look at the time, there was no way that these officers could have sufficient time to digest or analyze the stimuli before they fired. So what his conclusion was is that they just fired blind. And that, as Chief Judge said, there wasn't enough time. They should have gave orders. They gave the orders, but before they even finished the orders, they ended up shooting. But what did they say? Show hands? Show us your hands, which means that if there was a gun, they'd be looking at his hands. Right? And that's why we cited in our brief the excited utterance. They didn't say drop your gun. They all say we saw him with a gun, but they didn't say drop your gun. They said show us your hands. That means they're not looking at his hands. They can't see his hands. If you can't see his hands, you can't see a gun. And the whole point of the... Well, if they assume there's racking, they can assume that. But how is there racking when it's audible on the officer's body cam, but none of the words of my client are? So maybe I misremembered this, but I thought one of the lawyers on either side said your expert admitted that the racking was audible. What he believes to be. He says the racking is there. There is a metal clanking sound. No, but he called it racking. I thought we were all on the same page that it was racking. He did call it racking. Okay, well, so why are you fighting that? It's your own side. I assume the expert knows a little more about this than you or, for that matter, me. Understood, but that doesn't mean it came from the plaintiff. That's the only point I'm trying to make. Well, it doesn't matter. I mean, you get to argue the case the way you want to argue it. But if you're going to put an expert in that says there was racking, it seems funny for you to now say there wasn't racking. Which witness took the position that it was a safety on one of the officer's guns that made the noise? Who took that position? There was a line of questioning as to the officers on whether it could be mistaken for the release of the safety on the AR-15s. And the testimony from the officers was that the release of the safety makes a soft noise versus the noise of a racking. That was the testimony of the officers. Well, I think we've got your argument. Is there anything you came here to say that you haven't had a chance to say? No, just in closing, Your Honor, this is a question of fact for the jury. Judge Roberts in the district court made the right decision. Thank you. Thank you so much. So we have two very quick rebuttals apparently. All right. I will be very quick. I want to address two quick things. One, the Dickerson case that plaintiff relies on does not involve racking. It's not analogous to this case here. And I think plaintiff's avoidance of your question as to a case showing these facts is telling. There is no case where facts like this involving the racking would tell the officers that there's this bright line rule that their actions were constitutionally unreasonable. From your perspective, does it matter who's doing the racking or was it just the fact that there was a racking sound? Well, I can tell you that there's no way it could have been the officers. And the officers knew it could not have been them racking the gun because, one, it's a semi-automatic sound of a racking. They're all carrying rifles. Two, officers carry their rifles loaded and ready to use so that they're ready to fire. So they don't have to rack their guns. So when the officers hear this racking sound, they know there's only one place it could be coming from. But regardless, like I said earlier, even if they were mistaken that it wasn't a racking sound, which everybody and plaintiff's expert even admits they're still entitled to qualified immunity here, even if there's a gray area, should be qualified immunity granted to the officers. Thank you. Mr. Garish. Thank you, Your Honor. Just two quick points. Factually, there was a magazine in the gun. Mr. Lorelli is wrong, and the trial judge got this wrong too. If you look at docket number 89, page 1840, they found another magazine in the gun. That's the first point I wanted to make. The only other point is I want to read from Dickerson. Not only did it not involve racking, but the very fact that Mr. Lorelli says this is the best case is telling. Because this is what this court said in Dickerson. When the facts are viewed in the light most favorable to the plaintiffs, there was evidence that Dickerson had simply walked slowly to the front door with his hands at his side and that he was shot while still inside the house before he opened the door. So if that's their best case, that proves my point that it was not clearly established at the time that the actions taken by the officers were use of excessive force. And there isn't any better case than that. And that's the main point I want to leave the court with. Okay. Thanks to all three of you for your helpful arguments. We really appreciate it. Thanks for your helpful briefs. Tricky case. The case will be submitted, and the clerk may adjourn the court.